UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DOUGLAS A. BROWN,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF CALDWELL, a subdivision of the state of Idaho, MARK WENDELSDORF, GARRET NANCOLAS, MONICA JONES and JOHN/JANE DOES I through X, whose true identities are presently unknown,<br><br>    Defendants. | Case No. 1:10-cv-536-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants' motion for Summary Judgment (Dkt. 32). The Court heard oral argument on February 22, 2012. Being familiar with the record and pleadings, and counsel's arguments at hearing, the Court will deny Defendants' motion.

## BACKGROUND

**1. Plaintiff Douglass A. Brown's Work History**

Douglass A. Brown was hired by the City of Caldwell in 2000. *Second Am. Compl.*, ¶ 10, Dkt. 6-1. As a Fire Marshall and Deputy Fire Chief, Brown's duties included responding to public inquiries on Uniform Fire Code, Uniform Building Code and other related guiding principles of fire prevention and public safety, and working closely with the Fire Chief on code interpretation and applications to balance the need of

MEMORANDUM DECISION AND ORDER -1

developers and municipal fire safety. The City also asked Brown to keep the Fire Chief, as well as designated others, informed about work progress, including present and potential work problems and suggestions for new or improved ways of addressing such problems. *Johnson Aff.*, Ex. 1, Dkt. 40-4 at 18-19.,

Brown performed well and received a fair amount of positive feedback while employed for the City of Caldwell. Over the course of his employment he received seven pay raises via an "Annual Performance Pay Increase." *Id.* at 9-16. The final increase occurred on September 15, 2008. *Id.* at 9. In addition to annual pay increases, Brown was nominated for "Employee of the Month" in June 2006, and was described by Chief Wendelsdorf as "one of the most dedicated persons in the fire service." *Johnson Aff.*, Ex. 1, Dkt. 40-2 at 21. Brown also received a "Spot Award" in 2007 for going above and beyond the call of duty. *Wendelsdorf Depo.* 45:1-17, Ex. 4, Dkt. 38-6 at 12.

For Brown's August 2008 performance evaluation, Chief Wendelsdorf gave Brown an "Exceeds Expectation" rating in 14 out of the 24 areas listed. *Id.* The form explains it thus, "Exceeds Expectations = consistently exceeds expectations, is recognized by peers and/or customers in his/her work performance and provides a positive example for other." *Id.* at 10. While the evaluation noted the "need to work on a positive and supportive attitude," *Johnson Aff.*, Ex. 1, Dkt 40-2 at 11, Brown met performance standards in all other areas. *Id.* at 9-17. This was the only performance evaluation Brown received while under Chief Wendelsdorf. *Wendelsdorf Depo.* 34:8-25, Ex. 4, Dkt. 38-6 at 11.

MEMORANDUM DECISION AND ORDER -2

2. **Alleged Protected Activity**

Although Brown had received positive feedback up to that point, this changed in mid-September 2008 when Brown noticed the Can-Act theater company occupying an unsafe building. *Johnson Aff.*, Ex. 1, Dkt 40-2 at 7. Brown believed the building was owned by the City and emailed City Officials about his safety concerns: "[T]he City Code require[s] such activities be held in safe venues. This isn't. Liability? You bet." *Id.* (punctuation omitted). Brown also wanted to know "who allowed the use of [the building] for a theatrical company to move in?" *Id*. at 8.

Two days after Brown sent the email, a meeting was held to discuss it. Hand-written notes recorded Mayor Nancolas' comments:"I want you to ask questions, it's just how you ask the questions. Once you put it in writing…you create a liability – your emails are subject to public records request. Pick up the phone and ask the question." *Johnson Aff.,* Ex. 1, Dkt. 41-5 at 14-17.  Brown later testified that he understood the Mayor's comments to mean that the City did not like how Brown was reporting code violations "in that by documenting anything in writing, you're creating a liability to (sic) the City." *Brown Depo.*, Ex. 6, Dkt. 39-1 at 17. This incident was eventually noted as a reason for firing Brown. *Johnson Aff.*, Ex. 1, Dkt. 40 at 9.

A few months later, Brown was again confronted over his tendency to document poor conduct. On March 13, 2009, Brown sent an email acknowledging recent improvements to Beer and Wine license inspections and praising co-workers for their efforts. *Johnson Aff.*, Ex. 1, Dkt. 40-2 at 2. Chief Wendelsdorf responded the same day with a letter regarding "Information Contained in E-mails." *Id*. Chief Wendelsdorf

MEMORANDUM DECISION AND ORDER -3

expressed concern that Brown's email documented a prior lax attitude about Beer and Wine license inspections.

> PLEASE understand that all the emails received and sent form a City account is public and subject to a public information request.
>
> …The inclusion [in your email] of "because the casual approach to B&W's before that may have left the licensee smiling, but the hazards not all corrected. What we need to guard against now is that we don't backslide to where we were before."
>
> Basically, you have admitted that you knew of the 'casual' approach but did nothing about it."

*Id.* In responding, Brown acknowledged that he understood that "editorializing is now no longer tolerated by the City, because it might pose a potential liability risk, or at the very least, an embarrassment." *Castleton Aff.*, Ex. B, Dkt. 32-4 at 30; *see also Brown Depo.* 108:12-109:15, Ex. 6, Dkt. 39-2 at 4. Brown also expressed his appreciation for Chief Wendelsdorf's "patience [while] working with me on this." *Id*.

What the City viewed as Brown's problematic communication style prompted a third round of reprimands in July of 2009. Brown had prepared a memo about converting the Van Buren Elementary School into an alternative high school. *Johnson Aff.*, Ex. 1, Dkt 40-1 at 13-20. As part of the memo, Brown listed fourteen points that, in his mind, "constitute[d] a distinct hazard to life and property." *Id*. at 15-16. The last point concerned the fact that the "structure is proposed to be occupied by alternative high school students." *Id.* at 16. Brown continued to explain the significance:

> Let me expand on that last item. Please understand, I do not intend to cast any dispersions upon alternative high school students. Many of these students are true lessons in courage and perseverance. But let

MEMORANDUM DECISION AND ORDER -4

> me be perfectly clear, this is an entirely different group of people than elementary school students.
> …
> Please consider, as I must in evaluating the risks here, that some of these new students are already parents and some will insist in bringing babies to class. Some are socially or emotionally challenged. Some are physically or mentally challenged. Some may be using prescription medications or illegal drugs that could adversely affect their judgment. Some are smokers who have cigarette lighters or matches readily available, some are known "trouble makers" (gang bangers, vandals, irrational behavior, etc.). These are <u>new</u> human risk factors being introduced into the <u>old</u> building.

*Id.* at 16-17. Brown closed the memo by reiterating his commitment to "protect the lives and property of the people of Caldwell…[which] is why I have required the [Van Buren building to] be equipped with fire sprinklers if it is to be used as the new Canyon Springs Alternative HS." *Johnson Aff.*, Ex. 1, Dkt 40-1 at 20.

Both Brown and Wendelsdorf testified that each thought it was an internal memo and would not be supplied to the public. *Wendelsdorf Depo*. 116:11-14, Ex. 4, Dkt. 38-7 at 6; *Brown Depo*. 184:3-5, Ex. 6, Dkt. 39-3 at 3. However, the memo was released and offended members of the School District. A few days later Brown was issued a Disciplinary Notice-Final Warning. *Id.* at 10.

During the fall 2009 election cycle, Brown supported mayoral candidate Helmut Martinez Kohler. *Second Am. Compl.* ¶ 17, Dkt. 6-1. Incumbent Mayor Nancolas learned of Brown's support in October while reading about campaign donations in a local newspaper. *Nancolas Depo*. 87:21-88:14, Ex. 7, Dkt. 39-4 at 24. He also saw Brown supporting Kohler at campaign debates. *Id.* at 89:20-90:17, Dkt. 39-4 at 24-25. Brown's support for the mayoral challenger was also known by both Human Resource Director

MEMORANDUM DECISION AND ORDER -5

Jones and Chief Wendelsdorf. *Jones Depo*. 170:3-6, Ex. 5, Dkt. 38-10 at 20; *Maiello Aff.*, Ex. 8, Dkt. 39-6 at 3. In fact, Wendelsdorf had told Marc Maiello that "Doug had been planning his ouster." *Id*. Director Jones had also heard the rumors that if Kohnler were elected that Brown would replace Wendelsdorf as Fire Chief. *Jones Depo.* 172:14-23, Dkt. 38-10 at 20. And she admitted that she joked with colleagues about "who we were all going to be replaced by if Helmut got in." *Id*. at 173:15-20, Dkt. 38-10 at 20.

3.  **Brown's Termination**

Brown was terminated shortly after the elections took place, when he left a negative voicemail about a co-worker, Adele, on another co-worker's phone. *Jones Aff.*, Ex. A, Dkt. 32-6 at 2-3. Adele and Brown had some negative interactions in the past, including when Brown "reported problems" of Adele "interfer[ing]" with him doing his job. *Brown Depo.* 44:16-25, Dkt. 39-1 at 13. Brown admitted that "the comments were bad; they were derogatory towards Adele and he didn't blame Adele for being upset." *Jones Aff.,* Ex. A, Dkt. 32-6 at 2-3. When Adele complained, Brown was given a notice of proposed disciplinary action. *Johnson Aff.*, Ex. 1, Dkt. 40 at 13-14. A week later Brown was terminated. *Id.* at 9-10.

After termination, Brown filed suit for wrongful discharge in violation of the Idaho Code § 6-2101 *et seq.* (Idaho Whistleblower Act), breach of contract and the covenant of good faith and fair dealing, and under 42 U.S.C. § 1983 claiming retaliation against Brown for exercising his First Amendment rights of free speech and association (First Amendment retaliation). *Second Am. Compl.* ¶ 21-33, Dkt. 6-1. The Court subsequently granted Defendants' motion to dismiss Brown's breach of contract claim

MEMORANDUM DECISION AND ORDER -6

because Brown failed to give proper notice as required by Idaho Code § 50-219. *Order*, Dkt. 22. Defendants now bring a Motion for Summary Judgment (Dkt 32) to dismiss Brown's remaining claims for violation of the Idaho Whistleblower Act and First Amendment retaliation.

## LEGAL STANDARD

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id*. at 255, and the Court must not make credibility findings. *Id*. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing

MEMORANDUM DECISION AND ORDER -7

evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir.2002); see also Fed.R.Civ.P. 56(e). In determining admissibility for summary judgment purposes, it is the contents of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony of contents would not be hearsay).

## DISCUSSION

Before moving on the merits of Defendants' motion, the Court must address Defendants' motion to strike. Defendants contend that Brown failed to lay an adequate

MEMORANDUM DECISION AND ORDER -8

foundation for certain documents referenced in his response. Defendants cite *Orr v. Bank of America*, 285 F.3d 764 (9th Cir. 2002) in support of their position. However, documents produced by a party in discovery are deemed authenticated when offered by the party-opponent. *Id*. at 777 n.20. Thus, the Court can properly consider the documents within Exhibit 1 (Dkt. 40 et seq.). Additionally, in *Orr*, the Ninth Circuit noted that authentication of a deposition is ordinarily "accomplished by attaching the cover page of the deposition and the report's certification to every deposition extract." *Id*. at 774. The depositions presented here contain both the cover page and the report's certification, and therefore are properly considered.

1.   **Idaho Whistleblower Act**

   A.   *Prima Facie Case*

   In *Curlee* the Idaho Supreme Court affirmed the three substantive elements of a claim under Idaho Code § 6-2104: "(1) she was an "employee" that engaged or intended to engage in protected activity; (2) her "employer" took adverse action against her, and (3) the existence of a causal connection between the protected activity and the employer's adverse action." *Curlee v.Kootenai County Fire & Rescue*, 224 P.3d 458, 463 (Idaho 2008).

   First, the parties agree that Brown was an employee and that on at least one instance Brown engaged in a "protected activity." *Defs.' Mem*. Dkt 32-1 at 11-12. On September 16, 2008, Brown noticed the Can-Act Theatre Group inside a City owed building that should have been vacant. Brown thereafter distributed an internal email

MEMORANDUM DECISION AND ORDER -9

reporting his safety concerns. Both parties agree that this email constitutes a protected activity under the Idaho Whistleblower statute. *Id.; see also Pl.'s Mem.*, Dkt 36 at 12.

The parties, however, disagree about whether two other instances fall within the purview of "protected activity." Defendant contends that the Beer and Wine inspection email, and the Van Buren Memo were not protected activities because they did not involve a legal violation that was actively occurring.

The Idaho Supreme Court addressed a similar argument in *Van v. Portneuf Medical Center*, 212 P.3d 982 (Idaho 2009). In that case the defendant asserted that communicating "hazards which are causing or likely to cause serious injury, death, or physical harm to employees" was not a protected activity because it was not a report of an actual legal violation. *Id.* at 989.  The Idaho Supreme Court disagreed, holding that such communications "implicate laws, rules and regulation and do qualify as protected activities under the Whistleblower Act." *Id.*

In the current case, Brown communicated about the thoroughness of code inspection and the safety of converting the Van Buren building into an alternative high school. Both directly address the City's compliance with laws, rules, and regulations. Both therefore fall within the scope of "protected activity" as pronounced in *Van*.

Second, the parties agree that the City of Caldwell was Brown's employer, and that termination constitutes adverse action against Brown. *Defs.' Mem.* Dkt 32-1 at; *Pl.*'s *Mem*. Dkt 36 at 13.  But Defendants argue that Brown's notice was not timely because Brown alleges that the adverse activity included the reprimands Brown received leading

up to his termination, and Brown did not file this action within 180 days of being counseled about the Can-Act email in September 2008.

The Court disagrees. The Whistleblower Act requires that a plaintiff file an action under the Act "within 180 days after the occurrence of the alleged violation..." I.C. § 6-2105(2). Here, Brown alleges that Defendants retaliated against him "in the form of reprimands ultimately culminating in the wrongful discharge of his employment." Brown filed this action within 180 days after his termination. Under Ninth Circuit precedent, which the Court finds instructive here, a court may consider a series of adverse actions cumulatively as a single retaliatory event. *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir. 2003). Thus, by filing this action within 180 days of his termination, Brown's filing of his whistleblower claim was timely.

Third, and finally, Brown has established causation for summary judgment purposes. The adverse action must be causally linked to the protected activity. Causation is an issue of fact for the jury and only rarely can the issue be determined on a motion for summary judgment. *Van*, 212 P.3d at 989-90 (citing *Curlee*, 224 P.3d at 396). While the final act preceding termination was somewhat different than the prior acts, the evidence supports a reasonable inference that the protected activities were causally linked to the adverse actions. Thus, a prima facie claim of retaliatory firing has been established.

### B. *McDonnell-Douglas v. Curlee*

Because he established a prima facie case, argues Brown, the Idaho Supreme Court's holding in *Curlee v. Kootenai County Fire and Rescue* requires this Court to deny summary judgment on Brown's whistleblower claim without further inquiry into

MEMORANDUM DECISION AND ORDER -11

Defendants' allegedly legitimate reasons for firing Brown. 224 P.3d 458 (Idaho 2008). In *Curlee*, the Idaho Supreme Court held that if a plaintiff establishes a prima facie case of retaliatory discharge under the Idaho Whistleblower Act, then the trial court at the summary judgment stage cannot consider whether the employer had a legitimate, non-retaliatory reason for firing the employee. *Id.* at 463. The *Curlee* court concluded that the district court erred by accepting the employer's justification for discharging the plaintiff and requiring her to show that the justification was, in fact, a pretext. *Id.*

In reaching this conclusion, the Idaho Supreme Court opted not to apply the traditional *McDonnell Douglas* burden-shifting framework that federal courts use in employment cases at the summary judgment stage. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-804 (1973). Under the *McDonnell Douglas*, once the plaintiff establishes a prima facie case, employer may produce evidence that it discharged the plaintiff for a legitimate, non-retaliatory reason. If the employer meets this burden, the burden then shifts back to the plaintiff to prove that the legitimate non-discriminatory reason the employer proffered is, in fact, a pretext. *Dawson v. Entek Intern.*, 630 F.3d 928, 934-935 (9th Cir. 2011).

This Court, however, must follow *McDonnell Douglas* despite the Idaho Supreme Court's holding in *Curlee*. State claims removed to federal court are governed by state substantive law and federal procedural law. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426-428 (1996). And the Ninth Circuit has held that *McDonnell Douglas* burden shifting is a federal procedural rule, and therefore applicable to supplemental state claims. *Dawson*, 630 F.3d at 935. So while the Idaho Supreme Court has chosen not to

MEMORANDUM DECISION AND ORDER -12

employ the *McDonnell Douglas* burden-shifting to whistleblower act claims, this Court must.

Applying the *McDonnell Douglas* framework, this Court will therefore consider Defendants' evidence that Brown was terminated for using "derogatory and unprofessional" language in his communications. *Johnson Aff.*, Ex. 1, Dkt 40 at 9; *Jones Aff.*, Ex. A, Dkt. 32-6 at 2-6.   Because Defendants have produced evidence that it terminated Brown for a non-retaliatory reason, the burden now shifts back to Brown to establish that the proffered reason is pretextual.

### C. *Pretext*

Showing that a given reason is pretextual can be done directly by showing the retaliatory reason is more likely than the legitimate reason, or indirectly by showing that the Defendants' explanation is "unworthy of credence." *Dawson*, 630 F.3d at 934-935. Further, the plaintiff need not provided direct evidence of retaliation; rather, the plaintiff must provide enough circumstantial evidence to create a material question of fact on pretext. *Id.* at 936.

Here, the Court must determine whether the evidence, viewed in a light most favorable to the Brown, creates a material question of fact on pretext. The first reasonable inference from the current evidence is that the style and content of Brown's communication was consistent over the course of his employment at the City of Caldwell. However, following the Can-Act email the City started finding fault with Brown's communications. Brown testified to this effect: "So, things that I'd been doing consistently for 8 1/2 previous years, suddenly it's not good anymore. We're going to

MEMORANDUM DECISION AND ORDER -13

write you up for it if you do something like that." *Brown Depo.,* 61:17-62:5, Dkt. 39-1 at 17-18.[1] If Brown's communication style was consistent over the course of his employment and Brown consistently received good reviews, then understandably one would wonder what had changed to trigger the progressive disciplinary actions.

Second, the timing could lead to a reasonable inference that there was a connection between reporting the violations and the adverse employment actions. Each report was followed by some form of adverse action. Brown was verbally counseled following the Can-Act email, a meeting with Chief Wendelsdorf followed the Beer and Wine inspection email, and a Disciplinary Notice-Final Warning followed the Van Buren memo. Each of these three incidences was noted on the final Notice of Termination. *Johnson Aff.*, Ex. 1, Dkt. 40 at 9-10. In these incidences Brown reported actual code violations, past lax attitudes regarding code compliance, and potential future code violations if action was not taken.

Additionally, the hand-written notes from the initial meeting between Mayor Nancolas, Chief Wendelsdorf, and Brown highlight the City's concern that documenting violations "creates a liability for the City." *Id*., Dkt. 41-5 at 14-17.  Mayor Nancolas counseled Brown to "[p]ick up the phone and ask the question" instead.  *Id.* at 15. Brown testified to what he believed Mayor Nancolas' comments meant: "[W]e don't like how you're reporting it in that by documenting anything in writing, you're creating a liability for the City." *Brown Depo.*, Ex. 6, Dkt. 39-1 at 17.

---

[1] At this stage in the proceeding, the Court cannot, and must not, determine the the accuracy of Brown's statement and conclusions.  However, the court must accept such testimony for purposes of a summary judgment motion, unless it is entirely implausible. See  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

MEMORANDUM DECISION AND ORDER -14

These concerns may also evidence a policy that would violate the Whistleblower act. The act provides that an "employer may not implement rules or policies that unreasonably restrict an employee's ability to <u>document</u> the existence of…a violation or suspected violation of any laws, rules or regulations." Idaho Code § 6-2104(4)(emphasis added). To only allow oral report of a violation or a suspected violation runs perilously close to this statutory "line."

Viewed in a light most favorable to Brown, the evidence creates a material question of fact about whether the legitimate reason given by the City was merely a pretext. Thus, summary judgment is inappropriate and should be denied.

### D. Application of Gross

Thus far Brown's Whistleblower claim remains; however, Defendants argue that "Brown cannot bring a Whistleblower claim and a First Amendment claim as companion causes of action, claiming that both were motivating factors for his termination. If Brown's purported whistleblowing activities were not the sole 'but-for' cause of his termination, then under *Gross* Brown has failed to prove his Whistleblower statute claim, and it must be dismissed." *Defs.' Memo*, Dkt 32-1 at 17 (referencing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009)).

The Court believes, however, that Defendants' argument that a plaintiff cannot bring multiple claims with differing motivating factors misinterprets *Gross*. In *Gross*, the Court grappled with whether mixed-motive jury instructions were appropriate in ADEA cases. *Gross*, 575 U.S. 167; *Shelley v. Geren*, 666 F.3d 599, 606-08 (9th Cir. 2012). That

case merely instructs that in ADEA cases a plaintiff must prove but-for causation at trial, rather than relying on the burden shifting that occurs in Title VII cases. *Id.*

While Defendants attempt to have Brown's claim dismissed under *Gross*, they fail to explain why the Court should extend the holding in *Gross* beyond ADEA cases, or how the Court should incorporate the *Gross* holding into its analysis at the summary judgment stage. Indeed they cannot. In the recent case of *Shelly v. Geren*, the Ninth Circuit reviewed the *Gross* holding before determining that even in ADEA cases governed by *Gross,* summary judgment is correctly resolved using the traditional *McDonnell Douglas* burden analysis. 666 F.3d 599, 606-08 (9th Cir. 2012). Because Brown established a prima facie case and raised a genuine issue regarding pretext under the McDonnell Douglas burden shifting analysis, Brown's Whistleblower claim survives summary judgment.

**2.      First Amendment Retaliation.**

It is well established that the government may not abuse its position as employer to stifle the First Amendment rights of its employees. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *see also Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). It is "clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right in certain circumstances to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

The Ninth Circuit has established a "sequential five-step series of questions" to evaluate First Amendment retaliation claims:

MEMORANDUM DECISION AND ORDER -16

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Gibson v. Office of Attny. Gen. State of California*, 561 F.3d 920, 925 (9th Cir. 2009) (citing *Eng*, 552 F.3d at 1070).

Both parties have agreed that the first, second and fourth questions have either been met or are inapplicable in this case. Further, Defendants concede that the final question would have to be addressed by the jury alone, and cannot be resolved on summary judgment. Thus, the Court need only analyze whether the speech was a substantial or motivating factor in the adverse employment action.

The Ninth Circuit has affirmed that the third step, whether plaintiff's speech was a substantial or motivating factor for the adverse employment action, "is purely a question of fact." *Eng*, 552 F.3d at 1071. Thus, a court must determine if the evidence, with all reasonable inferences drawn in favor of the non-movant, creates a material question of fact in this regard.

Here, Brown presents the Court with an affidavit of Marc Maiello as evidence of his theory that part of the reason he was terminated was because he supported Mayoral Challenger Kohler. In his affidavit, Marc Maiello affirmed that Chief Wendelsdorf knew that both Brown and the firefighters' union supported Kohler. *Maiello Aff.*, Ex. 8, Dkt. 39-6 at 3. Maiello recounted "that [Wendelsdorf had] heard…that if Mr. Martinez won the election Mr. Martinez planned to appoint Doug Brown to replace Mr. Wendelsdorf as

MEMORANDUM DECISION AND ORDER -17

Fire Chief." *Id*. Viewed in a light most favorable to the non-movant, Brown, this suggests that Wendelsdorf was concerned about the possibility of being replaced. Additionally, Director Jones testified that she knew about the replacement "rumor," *Jones Depo*. 170:3-23, Ex. 5, Dkt. 38-10 at 20, and Mayor Nancolas affirmed that he knew Brown supported Kohler. *Nancolas Depo*. 87:21-90:17, Ex. 7, Dkt. 39-4 at 24-25.

Viewed in a light most favorable to the non-movant, Brown, this evidence supports Brown's theory of retaliatory firing. It creates a material question about whether Brown's first amendment activity, supporting Helmut Martinez in the Mayoral race, was a substantial or motivating factor in his termination. Thus, it is inappropriate to dismiss this claim on summary judgment.

## ORDER

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Dkt. 32) is **DENIED**.

DATED: March 14, 2012

B. Lynn Winmill
Chief Judge
United States District Court

MEMORANDUM DECISION AND ORDER - 18